# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | **No. 2:15-CR-306-MMB** |
| HASAN MORRISON, | ) | |
| Defendant. | ) | |

## DEFENDANT MORRISON'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR REDUCTION IN SENTENCE

Defendant Hasan Morrison has moved this Court for a reduction in the length of his prison sentence based on "extraordinary and compelling reasons," 18 U.S.C. § 3582(c)(1)(A)(i), to wit, physical conditions that placed him at particular risk of contagion and adverse outcome from exposure to the novel coronavirus. Doc. 60 ("RIS motion"). On December 18, a month after filing and before the government had responded, he contracted COVID-19 disease. *See* Doc. 62; Doc. 63 (sealed exhibit, at 42). Yet the government's response (Doc. 63, hereinafter, "Resp.") now opposes relief, chiefly for two reasons[1]: a claim that the positive test is a reason *not* to release him "to protect public health," Resp., at 14, and that despite his medical circumstances a review of "the 3553(a) sentencing factors also supports denial of relief." Resp., at 16. Neither of these contentions is persuasive.

---

[1] The government also includes in its Response the usual boilerplate panegyric to the BOP's COVID-19 response efforts. Resp., at 5–10. Be that as it may, the RIS motion requests a sentence modification for one particular nmate based upon the applicable statutory criteria; it is not a civil rights suit or general attack on the BOP's medical care or on the execution of its COVID plan. Similarly, most of the government's legal overview (Resp. 9 n.1 & 11–14) is unresponsive to anything that the defendant has set forth and certainly does not demonstrate any legal errors in the defendant's presentation.

1

The government's response has a heads-we-win/tails-you-lose quality to it. The government contends that while ill, Mr. Morrison should not be released for "public health" reasons, and that if he recovers, "the risk is mitigated," thus obviating release for that reason as well. Resp. 15.[2] (Of course, if he does not recover, or symptoms linger or return after a period of remission, as they often do with this disease, the government still does not support relief.) But a fair-minded analysis shows that Mr. Morrison's current diagnosis demonstrates all the more urgently why his motion should be granted.

In a prison setting, Mr. Morrison is not and cannot be isolated. His illness, being highly contagious, poses an ongoing threat to other inmates – both those who are well and those who are sick – and of course to any number of prison staff, who are inherently unable to maintain social distancing and other precautions. (Concomitantly, the institution staff poses a risk to him, as each of them goes home at the end of their shifts and is then potentially exposed to ever widening, multiple circles of strangers, over which a prisoner has no control or consent.) Even if housed solely with others who have tested positive, Mr. Morrison's illness impedes his fellow inmates' full and prompt recovery, as their illnesses impede his own.

If granted a sentence reduction to time served, on the other hand, Mr. Morrison would quarantine at home with his wife, who is a nurse. She can monitor his condition to determine what further medical care he may need. He would stay in his own room, posing no threat to anyone. A small "pod" of family members – main-

---

[2] The government's position is supported by the usual string-cite of cherry-picked case citations from the government's central database of RIS cases. Resp. 15–16. A WestLaw search discloses well over 50 reports of RIS motions granted to prisoners who had tested positive for COVID-19.

taining social distance and consistently wearing their masks and washing their hands – would minimize if not eliminate the so-called threat that the government imagines he poses, while COVID-positive, to public health. This factor thus cuts in favor of granting, not denying, the motion.

The current legal controversy over whether USSG § 1B1.13, in its present form, is an "applicable" policy statement of the Sentencing Commission within the meaning of § 3582(c)(1)(A) – ignored by the government in its Response, despite the fact that four Circuits now hold that it is not, with none to the contrary[3] – does not appear to be decisive in Mr. Morrison's case. The government does not dispute that even if § 1B1.13 is a controlling guide, Mr. Morrison's medical conditions (that is, his obesity and asthma), in the context of the global pandemic and its spread within the "correctional environment," satisfy categorically the requirement of "extraordinary and compelling reasons" that allow an individualized consideration for early release. *See* Dft. Motion (Doc. 60), ¶ 15.a–b (relying on USSG § 1B1.13, note 1(A)(ii)(I)); *cf.* Resp., at 16–17.

The government does contend that Mr. Morrison's release at this time would pose a "danger to the community." Resp., at 17. This is a criterion under USSG § 1B1.13(2) (p.s.), which incorporates the "danger" factor from 18 U.S.C. § 3142(g), part of the bail statute. Notably, the RIS statute does *not* makes this a separate consideration for motions under § 3582(c)(1)(A)(i), as here (except insofar as it might come into play in the court's consideration of the § 3553(a) factors). "Danger to the safety of any other person or the community, as provided under section 3142(g)," in fact, is a

---

[3] *See* Motion for Reduction in Sentence, ¶ 14. Since the defendant's motion was filed, the Fourth, Sixth and Seventh Circuits have joined the Second in taking that position.

disqualifier under the RIS statute for release under § 3582(c)(1)(A)*(ii)*, which only applies to "three-strikes" cases (18 U.S.C. § 3559(c)), but is not mentioned in subparagraph (A)(i). "Danger" is thus at least arguably not a proper consideration at all – at least not a separate one – in cases under (A)(i). See *United States v. Nasir*, — F.3d —, 2020 WL 7041357, *8–*9 (3d Cir., Dec. 1, 2020) (en banc) (provisions of Sentencing Commission "policy statements" inconsistent with unambiguous Guideline or statutory language are invalid and unenforceable). This consideration, instead, is part of the balancing to be performed in the court's reconsideration of the § 3553(a) factors; see *id*.(a)(2)(C) ("to protect the public from further crimes of the defendant").

Turning to the applicable § 3553(a) factors, then, the government's argument under this final step of the RIS formula (*see* Motion ¶ 16.b.) is likewise unconvincing. Rather than address the pertinent statutory factors in this case, as required by § 3582(c)(1)(A), either as outlined by the defendant in his RIS motion or in some other way, the government instead provides summaries of selected other decisions which it claims to be similar in particular ways that are not clearly related to any statutory factor. Resp., at 17–20.

In particular, the government emphasizes percentage of time served (almost 50% in this case), even though that is not a factor mentioned under § 3582(c)(2)(A)(i) (or under § 1B1.13 in health-related cases).[4] Mr. Morrison has been confined on this

---

[4] Nor is true, in any event, that relief has only, or predominantly, been granted in health-related cases to defendants who had already served "a large majority of their sentences," Resp., at 17–18 (quoting an E.D.Mich. case). See, *e.g.*, *United States v. Cornelio*, 2020 WL 6021466 (D.Haw., Oct. 12, 2020) (32 mos. of 135); *United States v. Foster*, 2020 WL 5876941 (D.Ore., Oct. 2, 2020) (1/3 of 36 mos.); *United States v. Body*, 2020 WL 2745972 (N.D.Ill., May 27, 2020) (4 mos. of 42 for "lifelong, unrepentant drug dealer"); *United States v. Delgado*, 2020 WL 2464685 (D.Conn., April 30, 2020) (29 mos. of 120).

case for more than 65 months, the equivalent of full service of a near-77-month (6 year, 5 month) sentence. If released, he would commence a five-year term of supervised release, under conditions established at sentencing and any further conditions the Court may now deem appropriate. By any measure, Mr. Morrison has been significantly punished, and the term of post-incarceration supervision serves both to protect the public and to deter any temptation to recidivate. Other factors now predominate, as outlined in detail in Mr. Morrison's motion but as to which the government's Response is silent.

For all of these reasons, and as set forth in more detail in Mr. Morrison's Motion and in the defendant's two supplemental filings, the Court should grant Mr. Morrison a Reduction in Sentence, as authorized by statute, and direct his release forthwith to reside with his wife and son in Bear, Delaware. Until fully recovered from his present illness, he should be required to follow her advice and their doctor's directions for the protection of his health and the health of others.

Respectfully submitted,

Dated:  January 4, 2021

*s/ Peter Goldberger*
PETER GOLDBERGER
 (Pa. Bar ID No. 22364)
50 Rittenhouse Place
Ardmore, PA  19003

 610-649-8200
fax: 610-649-8362
peter.goldberger@verizon.net

*Counsel for Defendant Morrison*

CERTIFICATE OF SERVICE

On January 4, 2021, I served a copy of the foregoing Reply on the attorneys of record for the government via this Court's ECF system, addressed to:

Salvatore L. Astolfi, Esq., Ass't U.S. Attorney & Deputy Chief, Crim. Div.
Katayoun Copeland, Esq., Ass't U.S. Attorney & Chief, Criminal Division
& Robert A. Zauzmer, Esq., Ass't U.S. Attorney & Chief, Appeals Division
Eastern District of Pennsylvania

              __s/Peter Goldberger_____